

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: February 01, 2024.**

_____
**CRAIG A. GARGOTTA**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 10-50528-cag |
| | § | |
| COSAS CLARAS, LP | § | CHAPTER 7 |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| JFMPC, LLC, JFMLT, LLC | § | |
| AND JORDAN FORD, LTD, D/B/A | § | |
| JORDAN COLLISION | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | ADV. NO. 22-05049-cag |
| | § | |
| JTL JV, LLC, | § | |
| | § | |
| Defendant. | § | |

### <u>MEMORANDUM OPINION</u>

This Memorandum Opinion resolves the above-referenced adversary proceeding in which the Court conducted a three-day, bifurcated trial before taking the matter under advisement. Trial was concluded on May 19, 2023, and the Court allowed the parties to submit post-trial briefs. The

Court adopts and incorporates herein by reference the Statement of Stipulated Facts contained in the Proposed Joint Pretrial Order filed in this adversary proceeding on May 3, 2023 (ECF No. 43 at 6–7)[1]. The Court has reviewed the record, and has carefully considered all evidentiary objections raised and sustained in making its findings of facts. Based on the briefs, the arguments, the record, and the applicable law, the Court finds that Plaintiffs' request for a declaratory judgment that they have acquired title to the Disputed Tract through adverse possession is granted.

### JURISDICTION, AUTHORITY, AND VENUE

This Court has jurisdiction over the proceeding under 28 U.S.C. §§ 1334, 157(a), and 157(b)(1). This proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (N), and (O) because it seeks to establish ownership of a parcel of property in which the estate has an interest. Plaintiffs and Defendant consent to the entry of a final order and judgment by this Court (ECF Nos. 7, 9, 32, and 43). As such, this Court maintains subject matter jurisdiction and constitutional authority to enter the final order and judgment in this case. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This matter is referred to this Court pursuant to the District Court's Order of Reference.

### FACTUAL AND PROCEDURAL BACKGROUND

Debtor was an entity known as Cosas Claras, LP ("Debtor" or "Cosas Claras"). Pre-petition, Debtor engaged in real estate development and owned real property in Bexar County, Texas (ECF No. 59 at 142 and ECF No. 43 at 9)[2]. Specifically, on July 2, 2007, Cosas Claras conveyed approximately 28.79 acres to Tesoro Homes, Ltd. ("Tesoro")[3] out of a 55-acre tract near

---

[1] "ECF" denotes electronic filing docket number. Unless otherwise indicated, all docket or ECF references are to this adversary proceeding (Case No. 22-05049).

[2] ECF No. 59 refers to Trial Tr. Day 1.

[3] Tesoro Homes, Ltd. is a land development and home building company (ECF No. 63 at 9). Clay Schlinke was the sole limited partner and sole general partner of Tesoro from 2002 until approximately 2010. *Id.*

the intersection of Judson Road and Lookout Road (ECF No. 43 at 9). This left Cosas Claras with approximately 26.82 acres (the "26 Acres") (ECF No. 43 at 10). Carl Gamboa was the general partner of Debtor Cosas Claras (ECF No. 43 at 6, 11 and ECF No. 59 at 158).

On October 20, 2010, Tesoro executed a special warranty deed[4] to Plaintiffs (ECF No. 58 at 2). Unbeknownst to Plaintiffs and Tesoro, the latter did not own the one-acre parcel of land (the "Disputed Tract") (ECF No. 43 at 6). As such, the deed did not describe the Disputed Tract, the subject of this adversary proceeding (ECF No. 58 at 2). Plaintiffs, therefore, were not the actual record owners of the Disputed Tract. Even though the Disputed Tract's property description was not listed on the special warranty deed, the Bexar County Appraisal District created a tax account for Plaintiffs (ECF No. 43 at 6). Accordingly, Plaintiffs paid taxes on the Disputed Tract from 2011 to present (ECF No. 43 at 6).

On February 10, 2010, Debtor filed for relief under Title 11 of the United States Code[5] commencing Bankruptcy Case No. 10-50528 (the "Bankruptcy Case" or "Main Case") (Main Case ECF No. 1). Randolph N. Osherow (the "Trustee") obtained an order converting the case to Chapter 7 on May 18, 2010 (Main Case ECF No. 74). On November 7, 2011, the Trustee in the Bankruptcy Case moved to sell the 26 Acres, including the Disputed Tract, free and clear of all liens and interests pursuant to 11 U.S.C. § 363(f) (the "§ 363 Sale") (Main Case ECF No. 219). Notably, Plaintiffs were not afforded notice of Debtor's bankruptcy proceedings, including the § 363 Sale of the 26 Acres (ECF No. 43 at 3).

Carl Gamboa, as a creditor and general partner of Debtor, objected to the Trustee's Motion to Sell on November 28, 2011 (Main Case ECF No. 220). Gamboa argued that the Trustee intended

---

[4] Plaintiffs' deed describes Lot 4 of Judson Park, rather than the Disputed Tract (ECF No. 43-3 at 9).
[5] Unless otherwise indicated, all section references are to Title 11 U.S.C. __ *et seq.*

to sell the property for substantially less than its fair market value (ECF No. 43 at 11, ECF No. 59 at 155, and Main Case ECF No. 220). Gamboa was encouraged to bid on the property but did not have sufficient funds to do so (ECF No. 43 at 11 and ECF No. 59 at 154). After Gamboa spoke to Nathan Neis, an active real estate investor, Neis agreed to finance a bid for the 26 Acres (ECF No. 43 at 11 and ECF No. 59 at 154–158).

On February 20, 2012, the Court granted the Trustee's Motion to Sell to Equity Trust Company Custodian FBO Nathan Neis IRA (Main Case ECF No. 246). Neis was the highest bidder and only person present at the bankruptcy sale (ECF No. 60 at 74)[6]. On March 16, 2012, Neis assigned his rights as buyer to Defendant JTL, JV, LLC ("Defendant" or "Counter-Plaintiff"), of which Gamboa is the main principal (Trial Def. Ex. 22). On May 4, 2012, the sale of the 26 Acres closed (Main Case ECF No. 290).

Nearly two years later, Defendant sold the 26 Acres, including the Disputed Tract, to the Dominic Altomare 401k Plan, Gary Cardwell, and Kenneth R. Cooper ("Altomare") on May 5, 2014 (Trial Def. Ex. 36). Cooper has previously served as a real estate attorney to Gamboa and his companies (ECF No. 60 at 16). Defendant repurchased the 26 Acres, including the Disputed Tract, from Altomare nearly a year later on May 18, 2015 (Trial Def. Ex. 39).

Plaintiffs are two Texas limited liability companies named JFMPC, LLC and JFMLT, LLC, and a Texas limited partnership named Jordan Ford, Ltd. d/b/a Jordan Collision (collectively "Plaintiffs" or "Jordan Ford") (ECF No. 32 at 1). Plaintiffs operate a body shop adjacent to the Disputed Tract (ECF No. 43 at 1). Mike Trompeter and Marc Cross are each co-owners of Jordan Ford (ECF No. 59 at 58, 83).

---

[6] ECF No. 60 refers to Trial Tr. Day 2.

Defendant JTL, JV, LLC is a Wyoming limited liability company doing business in the State of Texas (ECF No. 43 at 9). Carl Gamboa is the main principal of Defendant (ECF No. 43 at 6). Defendant filed its trespass to try title lawsuit on March 18, 2020 (ECF No. 58 at 4) (the "State Court Lawsuit").

The Bankruptcy Case was reopened on January 27, 2022 (ECF No. 364). Plaintiffs commenced this Adversary Proceeding No. 22-05049 (the "Adversary") seeking declaratory judgment and a determination of ownership regarding the Disputed Tract (ECF No. 43 at 2).

## RELIEF REQUESTED

Plaintiffs assert causes of action under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202 ("Declaratory Action") and Chapter 22 of the Texas Property Code ("Adverse Possession Action") (ECF No. 43 at 2). Under their Declaratory Action, Plaintiffs seek a declaration "of joint one hundred percent ownership of the one acre tract of land," known as the Disputed Tract, and attorney's fees (ECF No. 43 at 2). Under Chapter 22 of the Texas Property Code and Texas Civil Practice and Remedies Code § 16.026 (the "Ten-Year Statute"), Plaintiffs assert a claim of adverse possession (ECF No. 43 at 2). Plaintiffs also claim the following alternative cause of action[7] in the event its other claims are unsuccessful: claim for improvements under Texas Property Code § 22.021 based on the value of improvements made by Plaintiffs to the Disputed Tract (ECF No. 43 at 3).

With respect to Plaintiffs' trespass to try title claim, and in addition to specific denials of certain portions of Plaintiffs' Complaint, Defendant claims that it is not guilty of the injury

---

[7] In the Joint Pretrial Order (ECF No. 43), Plaintiffs claimed several affirmative defenses to Defendant's counterclaims. Because the Court has ruled in favor of Plaintiffs, it will not address their trespass to try title claim nor their affirmative defenses.

complained of in Plaintiffs' Complaint (ECF No. 43 at 4). Defendant also claims the following affirmative defenses to Plaintiffs' claims:

a. Plaintiffs' claims are barred in full, or in part, under the doctrine of res judicata, collateral estoppel, judicial estoppel and/or equitable mootness.

b. Plaintiffs' claims are barred under the applicable statute of limitations.

c. Plaintiffs' claims are barred because superior title is vested in Defendant.

Defendant also filed counter-claims against Plaintiffs as follows:

a. Defendant seeks a declaration from the Court pursuant to 28 U.S.C. § 2201-2202 that:

1. The terms of the Sale Order mean what they say – i.e., that Defendant took title "free and clear of any and all liens, claims, interests or encumbrances (except for the 2012 ad valorem tax liens) pursuant to 11 U.S.C. § 363(f) of the Bankruptcy Code;

2. Defendant took title free and clear of any alleged adverse possession claims by Plaintiffs;

3. That the Deed by which Plaintiffs claim title to the Disputed Tract did not convey title to the Disputed Tract to Plaintiffs;

4. Plaintiffs have trespassed upon Defendant's property, being the Disputed Tract; and

5. That Defendant is the 100% fee simple owner of the Disputed Tract with clear title to the property.

b. Defendant also requests "[f]urther necessary or proper relief based on [the] declaratory judgment or decree . . . granted, after reasonable notice and hearing, against any

Plaintiffs, including an award of reasonable attorneys' fees and costs incurred in connection with all of the litigation Defendant was required to participate in to protect its rights, and as authorized by 28 U.S.C. § 2202.["]

c.   A trespass to try title claim seeking the entry of a judgment declaring and awarding title to and possession of the Disputed Tract to Defendant, along with damages to be awarded against Plaintiffs.

d.   A claim for trespass by Plaintiffs upon the property of Defendant, along with a request for an award of damages related to such trespass.

e.   Claims to recover for unjust enrichment, a constructive trust, and injunctive relief.

If Plaintiffs are unsuccessful in their adverse possession claim, Defendant asks that the Court conduct a second trial on damages, to which each party may be entitled. Furthermore, if the Court determines that either party is entitled to an award of attorneys' fees, the determination of that award will be made pursuant to Bankruptcy Rule 7054 or at a later hearing.[8]

---

[8] On April 18, 2023, the Court entered an Order in connection with Defendant's Motion for Entry of Order Bifurcating Trial on Certain Matters, and Extending Pre-Trial Order and Discovery Deadlines (ECF No. 39). The Court's Order provided, in part, as follows:

"The Court, shall, pursuant to Fed. R. Civ. P. 42(b) conduct separate phases of the trial in this case to determine property ownership and liability (in the first phase of the trial) and, if necessary, to determine damages (in the second phase) in order to avoid prejudice to the parties herein and in the interest of conserving the costs that might be incurred to prove up damages in this case until the Court has ruled on the parties' respective ownership interests and liability claims. In connection herewith, in the event that the second phase of the trial on damages, value and/or costs and attorney's fees is necessary pursuant to applicable law, including Section 22.021 of the Texas Property Code, the period to complete discovery will be re-opened and the parties will be authorized to amend pleadings, if necessary, and designate experts to support their respective claims, if any, for such damages, value and/or costs."

**PARTIES' CONTENTIONS**

### I.   Plaintiffs' Contentions

Plaintiffs allege the following facts as to their adverse possession action. Plaintiffs contend that in 1998, shortly after purchasing the collision center located at 13850 Judson Road in San Antonio, Texas, Plaintiffs began using the Disputed Tract adjacent to their collision center to store vehicles[9] (ECF No. 43 at 7). Plaintiffs assert that since 1998, Plaintiffs' use of the Disputed Tract has been actual, open, clearly visible, continuous, notorious, distinct, and hostile to anyone who passed by or inspected the Disputed Tract (ECF No. 43 at 7). Plaintiffs assert that in 1998, 2007, and 2012, they constructed fences around the Disputed Tract (ECF No. 43 at 7–8). In 2008, Plaintiffs contend that they paved the front "roadside" portion of the Disputed Tract and installed base material (ECF No. 43 at 7). Plaintiffs note that since 2011, they have paid the yearly property taxes due on the Disputed Tract (ECF No. 43 at 8). Additionally, Plaintiffs allege that in 2018, they paved the entire Disputed Tract (ECF No. 43 at 8). Plaintiffs further allege that Defendant did not bring suit to attempt to bar Plaintiffs' adverse possession claim until March 18, 2020 (ECF No. 43 at 8). Plaintiffs point out that no party to the bankruptcy case brought a violation of the automatic stay (ECF No. 43 at 8).

Regarding the bankruptcy proceedings, Plaintiffs contend that Debtor, through its general partner, Carl Gamboa, knew of Plaintiffs' adverse possession of the Disputed Tract when it filed for bankruptcy (ECF No. 43, Ex. C at 3). Plaintiffs allege that Gamboa arranged with Nathan Alan Neis to submit an offer for the purchase of the 26 Acres (ECF No. 43 at 9). Plaintiffs allege that on the same day that Neis assigned his rights as buyer for the purchase and sale of the 26 Acres,

---

[9] In the Joint Pretrial Order, Plaintiffs provide that they began using the Disputed Tract around 1998 (ECF No. 43 at 7). The Court notes, however, that Plaintiffs consistently testified that their use began around 1996 or 1997.

8

Brimex, LP, a limited partner of Debtor, remitted a check payable to Neis for "Earnest Money 26.82 Acres JTL" (ECF No. 43 at 9). Lastly, Plaintiffs contend that they were not listed on the bankruptcy schedules, matrices, or certificates of service prior to the Trustee's Motion to Sell, which included the Disputed Tract (ECF No. 43 at 9). Plaintiffs also assert that they are not listed as interested parties in Debtor's creditors list (ECF No. 43 at 9). Plaintiffs now claim title to the Disputed Tract by adverse possession (ECF No. 43 at 1).

## II.    Defendant's Contentions

First, Defendant argues that any adverse possession claim by Plaintiffs was "initially cutoff by Texas Tax Code § 33.54(a)." (ECF No. 58 at 3). Second, Defendant claims that at the time Debtor filed its bankruptcy case in 2010, all its assets, including its ownership of the remaining 26 Acres, went into *custodia legis* and were under the exclusive jurisdiction and control of this Court (ECF No. 43 at 10). Defendant argues that once the Trustee executed a Special Warranty Deed on May 3, 2012 conveying the property to Defendant[10], it acquired the 26 Acres "free and clear of any and all liens, claims, interests or encumbrances" pursuant to 11 U.S.C. § 363(f) of the Bankruptcy Code (ECF No. 43 at 12).[11]

Lastly, Defendant denies Plaintiffs' adverse possession claim, asserts that Plaintiffs are trespassers, and seeks damages (ECF No 43 at 1). Defendant alleges that at the time Debtor filed its Bankruptcy Case and throughout the pendency of the case, the owners of Debtor were unaware that Plaintiffs were parking vehicles on a portion of its property, or that Plaintiffs would assert rights to any part of Debtor's property (ECF No. 43, Ex. D at 2).

---

[10] Defendant was the designee of Nathan Neis in the § 363 Sale (ECF No. 43 at 12 and Trial Def. Ex. 22).
[11] The Court has received evidence relating to trespass and trespass to try title. In this Memorandum Opinion, the Court will discuss the evidence relating to declaratory judgment.

According to Defendant, the earliest date Plaintiffs could claim to have commenced adversely possessing the Disputed Tract—assuming all elements were met—is October 5, 2004 (ECF No. at 3). Defendant further alleges that Plaintiffs did not intend to possess the Disputed Tract under a claim of right until at least October 20, 2010 (ECF No. 58 at 4). Defendant argues that October 2010 was approximately the time that Plaintiffs mistakenly thought they were the owners of the Disputed Tract due to a recorded deed from Tesoro that did not actually convey the Disputed Tract (ECF No. 58 at 4). Additionally, Defendant alleges that Plaintiffs' use of a "fictitious deed" to establish a tax account for the Disputed Tract has no impact on Plaintiffs' ownership, as payment of property taxes is only relevant for purposes of ownership under the 25-year adverse possession statute (ECF No. 58 at 3).

**LEGAL STANDARD**

The parties seek declaratory relief under the Federal Declaratory Judgment Act set forth at Title 28, §§ 2201(a) and 2202, which provides in relevant part, as follows:

> §2201(a): In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

> §2202: Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

Pursuant to the Act, the Court finds that it may declare the rights and legal relations of the parties to the disputes brought herein.

DISCUSSION

I. ***The § 363 Sale, Notice, and Due Process***

      **a. Plaintiffs' due process rights were violated when they were not afforded notice of the § 363 Sale.**

The Court will address the threshold notice and due process issues before analyzing Plaintiffs' cause of action. First, Plaintiffs contend that Defendant's claims are barred due to Debtor's failure to provide notice of the Bankruptcy Case and the § 363 Sale to Plaintiffs, despite knowing that Plaintiffs were interested parties or creditors (ECF No. 43 at 3). This Court addresses what notice, if any, Plaintiffs were entitled to as a matter of procedural due process.

The Due Process Clause provides, "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Once due process is triggered, the question becomes what process is due. ***Morrissey v. Brewer***, 408 U.S. 471, 481 (1972). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." ***Mullane v. Cent. Hanover Bank & Tr. Co.***, 339 U.S. 306, 314 (1950).

The level of notice required by the Due Process Clause depends on whether a claimant or creditor is "known" or "unknown." ***Williams v. Placid Oil Co. (In re Placid Oil Co.)***, 753 F.3d 151, 154 (5th Cir. 2014). Known creditors or claimants include "actually known to the debtor and those whose identities are 'reasonably ascertainable.'" ***Id.*** (citing ***Tulsa Prof'l Collection Servs., Inc. v. Pope***, 485 U.S. 478, 489–90 (1988)).

11

The Court's first inquiry is whether Plaintiffs were "known" or "unknown" to Debtor. *In re Placid Oil Co.*, 753 F.3d at 154. During trial, the co-owner of Plaintiff Jordan Ford, Mike Trompeter, testified that since 1996 or 1997, Plaintiffs stored vehicles on the Disputed Tract (ECF No. 59 at 85). On occasion, the salvaged vehicles leaked fluids (ECF No. 59 at 91). There is no dispute that Plaintiffs erected a fence around all or part of the Disputed Tract (ECF No. 43 at 6). There is also no dispute that Plaintiffs made improvements to all or part of the Disputed Tract (ECF No. 43 at 6). Specifically, Plaintiffs installed limestone and lighting, and paved the frontage road (ECF No. 43 at 6). Plaintiffs' use of the Disputed Tract predated Debtor's Bankruptcy Case.

Yet, Debtor's main principal, Carl Gamboa, testified that he was unaware that Plaintiffs were occupying the Disputed Tract until an appraisal was conducted in 2015—years after the Bankruptcy Case was filed (ECF No. 59 at 41). The Court is not persuaded by this testimony. Gamboa testified that his initial inspection of the 26 Acres, which included the Disputed Tract, occurred in 2003 or 2004 (ECF No. 60 at 170). This initial inspection coincided with his acquisition of the original 55-plus acre tract at a sheriff's sale (ECF No. 60 at 183). Gamboa chose not to have a survey done at this time (ECF No. 60 at 170). Gamboa further testified that in 2007, he lived within 20 to 30 minutes from the Disputed Tract and visited the property six to eight times per year (ECF No. 60 at 144–45).

Notably, Plaintiffs' use of the Disputed Tract was sufficiently open and visible so as to notify Debtor. At the time Gamboa conducted his initial inspection of the original 55-acre tract around 2004, Plaintiffs were already occupying the Disputed Tract. This initial inspection alone should have put Gamboa on notice that Plaintiffs were occupying the Disputed Tract. *See Fletcher v. Minton*, 217 S.W.3d 755, 758 (Tex. App.—Dallas 2007, no pet.) ("A purchaser of land is charged with constructive notice of all claims of a party in possession of the property that the

purchaser might have discovered had he made proper inquiry.") (citing ***Apex Financial Corp. v. Garza***, 155 S.W.3d 230, 234 (Tex. App.—Dallas 2004, pet. denied)). The fact that Debtor did not inspect the property prior to his purchase because he "had no reason to suspect that [Plaintiffs] were on the property" is unavailing considering the overwhelming amount of evidence showcasing Plaintiffs' use of the Disputed Tract (ECF No. 60 at 170). Even though Gamboa, a real estate developer, failed to inspect the property or conduct a property survey, he should have observed Plaintiffs on the Disputed Tract during his numerous visits each year. Because Gamboa had ample opportunity to observe Plaintiffs on the Disputed Tract, this Court finds that Plaintiffs were known claimants or creditors.

The next inquiry is whether Plaintiffs were "reasonably ascertainable." ***Pope***, 485 U.S. at 489. A claimant is "reasonably ascertainable" if he can be discovered through "reasonably diligent efforts." ***Id.*** at 490. "[I]n order for a claim to be reasonably ascertainable, the debtor must have in his possession, at the very least, some specific information that reasonably suggests both the claim for which the debtor may be liable and the entity to whom he would be liable." ***In re Crystal Oil***, 158 F.3d 291, 297 (5th Cir. 1998).

Although Plaintiffs did not have direct communication with Debtor concerning the Disputed Tract, Jordan Ford's identity was "reasonably ascertainable." (ECF No. 43 at 6); ***Tulsa***, 485 U.S. at 489. At minimum, Gamboa either knew or should have known that Plaintiffs were using the Disputed Tract. Plaintiffs' use was objectively open and visible, given that they erected a fence, made improvements, and parked vehicles on the property. This information would reasonably suggest to the record owner, Gamboa, that Plaintiffs were using the Disputed Tract as their own. Accordingly, the Court finds that Debtor had specific information to reasonably suggest

that Plaintiffs would be harmed by the § 363 Sale of the Disputed Tract, and thus, Plaintiffs' identity was reasonably ascertainable.

The Court is aware that a fundamental purpose of bankruptcy "is to discharge, restructure, or impair claims against the debtor in an orderly fashion." ***Elliott v. GM LLC (In re Motors Liquidation Co.),*** 829 F.3d 135, 158–59 (2d Cir. 2016) (citing ***Lines v. Frederick,*** 400 U.S. 18, 19 (1970)). "The general rule that emerges . . . is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question." ***Schroeder v. New York,*** 371 U.S. 208, 212–13 (1962). In other words, the adequacy of notice will turn on what a debtor knew about a claim, or with reasonable diligence, should have known. ***DPWN Holdings (USA), Inc. v. United Air Lines, Inc.,*** 747 F.3d 145, 150 (2d Cir. 2014) (citing ***Chemetron Corp. v. Jones,*** 72 F. 3d 341, 345–46 (3d Cir. 1995)).

"Notice analysis takes place on two levels, statutory requirements and constitutional due process concerns." ***Citicorp Mortg. v. Brooks (In re Ex-Cel Concrete Co.),*** 178 B.R. 198, 202 (B.A.P. 9th Cir. 1995). Section 363(b)(1) provides that, "the trustee, *after notice and a hearing*, may use, sell, or lease, other than in the ordinary course of business, property of the estate. 11 U.S.C. § 363(b)(1) (emphasis supplied). Where a motion is made for authority to sell property free and clear of liens (as was the case here), Bankruptcy Rule 6004(c) requires that it "shall be made in accordance with Rule 9014 and shall be served on the parties who have liens or other interests in the property to be sold." Fed. R. Bankr. P. 6004(c). In its turn, Rule 9014 provides that "reasonable notice and opportunity for hearing shall be afforded any party against whom relief is sought" and instructs that the motion be served "in the manner provided for service of a summons and complaint by Rule 7004 . . . ." Rule 7004(b)(3) provides that when service is to be made on a

corporation, service may be effected by mailing a copy of the summons and complaint "to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Bankr. P. 7004(b)(3).

"The [Bankruptcy] Code and the Bankruptcy Rules have been deliberately crafted to provide procedural assurance that a party holding or claiming [an interest in] real property in the debtor's estate will receive timely notice of the trustee's intention to sell specific property free and clear of liens." *In re Ex-Cel Concrete Co.*, 178 B.R. at 203. Here, even the threshold requirements were not met, as it is undisputed that Plaintiffs did not receive notice of the § 363 Sale. Plaintiffs were not afforded notice of Debtor's Bankruptcy Case, nor were they listed on the bankruptcy schedules, matrices, or certificates of service prior to the § 363 Sale of the Disputed Tract. The Court can infer that Debtor, through Gamboa, had enough knowledge of Plaintiffs' potential claims such that he should have revealed those facts in his Bankruptcy Case. *See In re Motors Liquidation Co.*, 829 F.3d at 160 (finding that vehicular defects should have put auto maker on notice of claims, even if root cause was not clear). Gamboa's failure to make a reasonable inquiry of his property was at his own peril.

Under these circumstances, this Court cannot be confident that the § 363 Sale Order would have been negotiated and approved exactly as it was had Gamboa revealed that Plaintiffs were occupying the Disputed Tract. The facts here are colored by inadequate notice and Plaintiffs' lack of any meaningful opportunity to be heard. As potential claimants, due process entitled Plaintiffs to actual notice of Debtor's bankruptcy proceedings. The Court concludes that the lack of any notice to Plaintiffs resulted in a constitutional lack of due process.[12] Accordingly, the § 363 Sale

---

[12] The Court is aware that at least one court has concluded that, in the context of § 363 sales, the lack of any notice violates a party's due process rights. In these instances, a bankruptcy court may lack personal jurisdiction over the aggrieved party to adjudicate that party's property rights. The jurisdictional defect thus results in a void order. *See In*

Order will have no preclusive effect on Plaintiffs, such that they will not be bound by its terms.[13]

*See* **Crowell v. Theodore Bender Accounting (In re Crowell)**, 138 F.3d 1031, 1033–34 (5th Cir.

1998) (citing **Hansberry v. Lee**, 311 U.S. 32 (1940) (due process precludes binding a party to a

judgment when he did not have notice or an opportunity to be heard and his interests were not

adequately represented)).

## II.    *The Texas Tax Code*

Defendant argues that any adverse possession claims by Plaintiffs were initially barred by

Texas Tax Code § 33.54(a) (ECF No. 58 at 3). Section 33.54 of the Texas Tax Code states:

> (a) Except as provided by Subsection (b), an action relating to the
> title to property may not be maintained against the purchase of
> the property at a tax sale unless the action is commenced:
>> (1) before the first anniversary of the date that the deed
>> executed to the purchaser at the tax sale is filed of record;
>> or
>> (2) before the second anniversary of the date that the deed
>> executed to the purchaser is filed of record, if on the date
>> that the suit to collect the delinquent tax was filed the
>> property was:
>>> A.  the residence homestead of the owner; or
>>> B.  land appraised or eligible to be appraised under
>>> Subchapter C or D, Chapter 23.
> (b) If a person other than the purchaser at the tax sale or the person's
> successor in interest pays taxes on the property during the
> applicable limitations period and until the commencement of an
> action challenging the validity of the tax sale and that person was
> not served citation in the suit to foreclose the tax lien, that
> limitations period does not apply to that person.
> (c) When actions are barred by this section, the purchaser at the tax
> sale or the purchaser's successor in interest has full title to the
> property, precluding all other claims.

---

*re Ex-Cel Concrete Co.*, 178 B.R. at 205 (noting that because notice to Citicorp was defective, the court lacked personal jurisdiction over Citicorp and therefore could not authorize a sale free and clear of Citicorp's lien). In the instant case, and given the late stage of the litigation, the Court does not find it practicable to unwind the § 363 Sale.
[13] The parties may raise damages during that portion of the bifurcated trial.

Tex. Tax Code Ann. § 33.54. There is no claim or evidence which would trigger application of subsections (a)(2) on Plaintiffs' behalf. That leaves subsections (a)(1), (b), and (c).

Here, the § 363 Sale of the Disputed Tract to Neis was recorded on May 3, 2012 (ECF No. 43 at 12). Plaintiffs filed this adversary proceeding on July 15, 2022, more than two years after the § 363 Sale deed was recorded. Thus, Plaintiffs' action was untimely under either the one or two-year deadline. The only inquiry is whether the limitations exception in § 33.54(b) applies.

Section 33.54(b) provides that a person not served citation in a tax foreclosure suit may avoid application of the statutory limitations period by paying the property taxes in the years between the tax sale and the date suit is filed. *See* § 33.54(b); *but see **Session v. Woods**,* 206 S.W.3d 772 (Tex. App.—Texarkana 2006, pet. denied) (finding § 33.54(b) did not apply because no tax payment was made by claimant during applicable limitations period)); ***Roberts v. T.P. Three Enters.***, 321 S.W.3d 674 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (finding claim of adverse possession barred pursuant to Code § 33.54 absent evidence that claimant paid taxes on disputed property)); ***Holmes v. Cassel***, 2013 Tex. App. LEXIS 10266, 2013 WL 5497871 (Tex. App.—Houston [14th Dist.] Aug. 15, 2013, pet. denied) (finding claim of adverse possession barred pursuant to § 33.54 absent evidence that claimant paid taxes on disputed property)); ***Johnson v. Liberty Cty.***, 2016 Tex. App. LEXIS 8063, 2016 WL 4040143 (Tex. App.—Beaumont July 28, 2016, no pet.) (finding § 33.54(b) did not apply because no tax payment was made by claimant during applicable limitations period)).

On July 2, 2007, Debtor conveyed approximately 28.79 acres to Tesoro out of the original 55-acre tract (Trial Pls. Ex. 23). Notably, the conveyance did not include the Disputed Tract. On October 20, 2010, a special warranty deed was executed from Tesoro to Plaintiffs (Trial Pls. Ex. 20). Unbeknownst to the parties, the special warranty deed did not describe nor include the

Disputed Tract. Plaintiffs, under the impression that they had a deed to the Disputed Tract, presented the special warranty deed to the Bexar County Appraisal District to create the tax account for the property. There is no dispute that Plaintiffs paid taxes on the Disputed Tract from 2011 to present (ECF No. 43 at 6 and Trial Pls. Ex 14). When asked whether Defendant knew it was not paying property taxes on the Disputed Tract as of 2011, Defendant responded that it did not know because it would typically receive tax bills for the entire tract (ECF No. 60 at 143). Defendant further contends that it had no reason to believe that anyone had set up their own account (ECF No. 60 at 143). The Court finds that the limitations exception in § 33.54(b) precludes application of the limitations period to Plaintiffs because they paid the Disputed Tract's property taxes in the years between the § 363 Sale and the date this adversary proceeding was filed.

Even if the limitations exception in § 33.54(b) did not apply, "[a] State law time limit is unenforceable when it violates due process." ***In re E.R.***, 385 S.W.3d 552, 561 (Tex. 2012). In ***In re E.R.***, the Texas Supreme Court held that the statute's limitations period regarding terminating parental rights could not preclude a parent who was deprived of constitutionally adequate notice. ***Id.*** at 567. Specifically, the court found that "the statute cannot place a temporal limit on a challenge to a void judgment filed by a defendant who did not receive the type of notice to which she was constitutionally entitled." ***Id.*** at 566–67; *see also **id.*** at 562 ("Most state courts that have considered the issue have reached a similar conclusion: due process prevails over a state law time limit, even one imposed on challenges to termination of parental rights or adoptions."). The Court finds that even if Texas Tax Code § 33.54(a) applied to the case at bar, Plaintiffs would not be bound by the state law time limitation because their due process rights were violated when they did not receive notice of the § 363 Sale.

This Court finds that Plaintiffs meet the limitations exception in Texas Tax Code § 33.54(b), thus, their adverse possession claim is not barred by § 33.54(a). Further, the Texas Tax Code's limitations period does not preclude an adverse possession claim based on a constitutional due process notice violation. *See Ocwen Loan Servicing LLC v. Gonzalez Fin. Holdings, Inc.*, 77 F. Supp. 3d 584, 594 (S.D. Tex. 2015) (finding that Texas Tax Code's limitations period did not preclude quiet-title claim based on constitutional due process violation)).

## III. *Custodia Legis*

Defendant argues that at the time Debtor filed its bankruptcy case, all its assets, including its ownership of the remaining 26 Acres, went into *custodia legis* and were under the exclusive jurisdiction and control of this Court (ECF No. 43 at 10). The Court agrees. Once Debtor filed its bankruptcy petition on February 10, 2010, *custodia legis* interrupted Plaintiffs' prescription of the Disputed Tract. Yet, the issue of *custodia legis* is not dispositive because, as will be discussed in Section IV, Plaintiffs had already gained title to the Disputed Tract pre-petition.

"The institution of bankruptcy proceedings against the owner of property will arrest the running of the statute on the theory that the filing of the petition in bankruptcy takes the land from the claimant's possession and places it in the custody of the law." 2 Tex. Jur. Adverse Possession § 9. During the period that land is in the custody of the law, one cannot obtain title to it by adverse possession. *McAllen v. Crafts*, 139 S.W. 41, 43–44 (Tex. Civ. App.—San Antonio 1911, no writ). Thus, a property owner's institution of bankruptcy proceedings arrests the running of the statute of limitations on the theory that filing of the bankruptcy petition takes the land from the possession of an adverse claimant and places it in the custody of the law. *See Coppard v. Stanush*, 258 S.W. 254, 256 (Tex. Civ. App. 1924, no writ) (citing *Mueller v. Nugent*, 184 U.S. 1, 22 (1902) (finding

that filing of bankruptcy petition results in debtor's property being placed in custody of bankruptcy court)).

During closing argument, Defendant's counsel relies on *In re Colarusso* for the proposition that Plaintiffs' adverse possession claim was extinguished by the § 363 Sale[14] (ECF No. 63 at 165–70)[15]; ***Canzano v. Ragosa (In re Colarusso)*,** 382 F.3d 51 (1st Cir. 2004). As such, Plaintiffs are precluded from claiming title to the Disputed Tract (ECF No. 63 at 165–70). The Court disagrees. As Plaintiffs correctly note in their Post Trial Brief, the facts in the case at bar are distinguished from those in ***Colarusso*** (ECF No. 57 at 4). In ***In re Colarusso*,** the claimant contended that she acquired land by way of adverse possession. 382 F.3d at 54. The purchasers, on the other hand, sought to enforce the bankruptcy court's order approving the § 363(f) sale of the property. *Id.* On appeal, the court found that the claimant was precluded from asserting an interest in the property because the claimant attended the § 363(f) sale and failed to assert her claim. *Id.* at 60. Unlike the adverse possession claimant in ***Colarusso*,** Plaintiffs did not receive notice of the § 363 Sale, and thus, were unable to assert their claim or participate in the bidding process (ECF No. 57 at 4).

While no well-established line of precedent exists analyzing *custodia legis* and its impact on a party's adverse possession claim, that is not to say no such case law may be found. In ***In re Hopkins*,** the debtor-adversary plaintiff alleged that her ownership of the disputed property by adverse possession matured four years prior to her bankruptcy filing. 346 B.R. 294, 304 (Bankr.

---

[14] To the extent that Defendant argues the § 363 Sale interrupts adverse possession rights, the Court agrees but does not find such argument applicable in the instant case. As correctly noted by Defendant, courts have held that parties are estopped from asserting an adverse possession claim after receiving *notice* of the bankruptcy proceedings and unsuccessfully participating in the bidding process. ***In re Colarusso*,** 280 B.R. 548 (Bankr. D. Mass. 2002) (emphasis added). As applied here, however, Plaintiffs did not receive notice of any of Debtor's bankruptcy proceedings. Accordingly, the § 363 Sale would not have prevented Plaintiffs' adverse possession from accruing if they had not reached the statutory period. But, and as will be discussed in detail below, Plaintiffs were vested with full title of the Disputed Tract before the § 363 Sale.

[15] ECF No. 63 refers to Trial Tr. Day 3.

E.D.N.Y 2006). The court found that her cause of action arose prepetition and was property of the bankruptcy estate. *Id.* In other words, because the disputed property was in *custodia legis*, it could only be administered by the trustee. *Id.* at 303. Accordingly, only the trustee, as the representative of the estate, and not the plaintiff had standing to sue on the adverse possession claim. *Id.* The disputed property went into "a state of limbo" while the trustee determined whether the estate's interest in the adverse possession claim should be preserved. *Id.* at 307.

The ***Hopkins*** case is distinguishable from the case at bar. Although Plaintiffs' adverse possession claim arose prepetition, the distinguishing factor here is that the Disputed Tract left the bankruptcy estate when it was sold at the § 363 Sale. Once the § 363 Sale closed, the Trustee surrendered his rights pertaining to the Disputed Tract. The Court recognizes that the act of filing a petition for relief under the Bankruptcy Code creates an estate in bankruptcy. *See* 11 U.S.C. §§ 301 and 541. And that upon commencement of a case, a debtor's interest in property vests in the bankruptcy estate, where the property falls under the exclusive jurisdiction of the bankruptcy court or is in "custodia legis." *See* 28 U.S.C. § 1334(e); 11 U.S.C. §§ 323(a), 363, and 704.

Yet, the issue of *custodia legis* is inapplicable here for two reasons: first, the Disputed Tract left the bankruptcy estate after the § 363 Sale; and second, Plaintiffs proved their prepetition adverse possession claim by a preponderance of the evidence. As such, the Court finds that the concept of *custodia legis* does not preclude Plaintiffs' adverse possession claim.

## IV. *Adverse Possession*

This adversary proceeding involves a roughly one-acre parcel of land, the Disputed Tract, located near the intersection of Judson Road and Lookout Road. Defendant is the record owner of the Disputed Tract. Plaintiffs and Defendant own neighboring properties. Plaintiff Jordan Ford

operates a collision center, and its business is adjacent to the Disputed Tract. As previously noted, Plaintiffs allege that they began adversely possessing the Disputed Tract prior to the filing of Debtor's Bankruptcy Case. In their First Amended Complaint, Plaintiffs seek this Court's declaration that Plaintiffs own, by adverse possession or otherwise, the Disputed Tract that Defendant claims to own through a chain of conveyance originating in Debtor's Bankruptcy Case (ECF No. 32 at 2). Conversely, Defendant seeks this Court's declaration that it is the "100% fee simple owner of the Disputed Tract with clear title to the property" and that Plaintiffs have trespassed upon the Disputed Tract (ECF No. 58 at 3). The Court will first address whether Plaintiffs meet the elements of adverse possession under Texas law.

Under Texas law, adverse possession requires "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." Tex. Civ. Prac. & Rem. Code § 16.021(1). The elements to prove by a preponderance of the evidence are: (1) actual and visible possession of the disputed property; (2) that is adverse and hostile to the claim of the owner of record title; (3) that is open and notorious; (4) that is peaceable; (5) that is exclusive; and (6) involves continuous cultivation, use, or enjoyment for ten years. *Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 193–194 (Tex. 2003).

Plaintiffs assert their adverse possession claim under Chapter 22 of the Texas Property Code and Section 16.026(a) (the "Ten-Year Statute") of the Texas Civil Practice and Remedies Code. The Ten-Year Statute provides: "a person must bring suit not later than 10 years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property." Tex. Civ. Prac. & Rem. Code § 16.026(a). The ten-year limitations period begins to run on the date the adverse possessor actually and visibly

appropriates the claimed land. ***Waddy v. Houston***, 834 S.W.2d 97, 103 (Tex. App.—Houston [1st Dist.] 1992, writ denied). If an action for the recovery of real property is barred by the ten-year statute of limitations, the person who holds the property in peaceable and adverse possession has full title, precluding all claims. *See* § 16.030(a). Any ouster by the record title holder after the ten-year limitations period comes too late. ***Sterling v. Tarvin***, 456 S.W.2d 529, 533 (Tex. Civ. App.—Fort Worth 1970, writ ref'd n.r.e.). Mistaken beliefs about ownership do not transfer title until someone acts on them. ***Bywaters v. Gannon***, 686 S.W.2d 593, 595 (Tex. 1985); ***Rhodes v. Cahill***, 802 S.W.2d 643, 645 (Tex. 1990). "Thus, there must be adverse *possession*, not just adverse *beliefs*." ***Minh Thu Tran v. Macha***, 213 S.W.3d 913, 914 (Tex. 2006).

### a. Element 1: Actual and Visible Possession

Plaintiffs' actual and visible appropriation of the Disputed Tract was sufficient to place Defendant on notice of Plaintiffs' hostile claim. According to Mike Trompeter, Plaintiffs purchased the Jordan Ford Collision Center around 1996 or 1997 (ECF No. 59 at 85, 88). Marc Cross testified that at the time, Plaintiffs used the Disputed Tract to store wrecked vehicles, tires, sheet metal, wood, truck frames, car frames, and a boat (ECF No. 63 at 73–74). Trompeter testified that shortly after the Collison Center was purchased, Plaintiffs removed a pre-existing boundary fence to park vehicles on the Disputed Tract (ECF No. 59 at 63–64). There is no dispute that Plaintiffs constructed a fence around all or part of the Disputed Tract (ECF No. 43 at 8).

According to Trompeter, Plaintiffs' use of the Disputed Tract was not questioned, nor did anyone ask Plaintiffs to stop using the one-acre tract until March 2016, and again in February 2020 (ECF No. 59 at 64, 123 and Trial Def. Exs. 45, 46, and 55). Trompeter never received authorization to place the vehicles on the Disputed Tract (ECF No. 59 at 133). Sometime in 2002, Plaintiffs installed a barbed-wire fence around the Disputed Tract to deter crime and vandalism and secure

23

customer vehicles (ECF No. 59 at 92 and ECF No. 63 at 79–81). According to Trompeter, Plaintiffs openly used and possessed the Disputed Tract from 1997 to 2004 (ECF No. 59 at 66).

In 2008, Plaintiffs expanded their use of the Disputed Tract because they mistakenly believed they owned the property at that point (ECF No. 59 at 96 and Trial Def. Exs. 10, 12–17). At this time, Plaintiffs installed a new chain-link fence around the perimeter of the Disputed Tract and made other improvements (ECF No. 59 at 70, 73, ECF No. 63 at 84, and Trial Pls. Ex. 13 at 7). Cross testified that the purpose of the chain-link fence was to secure the Disputed Tract and deter vandals from using wire cutters on the fence (ECF No. 63 at 84).

In terms of improvements to the Disputed Tract, Trompeter and Cross testified that Plaintiffs applied base material, built and maintained the fence, added lighting, as well as paved the frontage road (ECF No. 59 at 70, 74 and ECF No. 63 at 84). According to Cross, Plaintiffs also performed lawn care and hired a waste truck to collect unusable vehicle parts spread across the Disputed Tract (ECF No. 63 at 81). On or around June 12, 2008, a survey conducted by Briones Consulting and Engineering, Limited indicated that the fence Plaintiffs erected was over the Disputed Tract (ECF No. 59 at 138).

Cross testified that prior to the filing of Defendant's trespass to try title action in state court in March 2020, Plaintiffs' use of the Disputed Tract was not interrupted (ECF No. 63 at 86). According to Cross, Plaintiffs used the entirety of the Disputed Tract and ensured the entire one-acre was fenced in for over ten years (ECF No. 63 at 86–87). The parties dispute whether Plaintiffs' use of the Disputed Tract was open and visible. When asked if Plaintiffs' use of the Disputed Tract could be seen from Judson Road or the nearby frontage road, Trompeter responded, "I mean if you looked, you couldn't miss it." (ECF No. 59 at 65).

Defendant agreed that he had seen the fence around the Disputed Tract (ECF No. 60 at 168 and Trial Def. Ex. 37 at JTL 0060). Nonetheless, Gamboa claimed he was unaware that Plaintiffs' fence encroached on his property because without a survey, he could not identify the property lines (ECF No. 60 at 170). Gamboa testified that during his initial inspection of the Disputed Tract in 2003 or 2004, he had no knowledge that Plaintiffs' fence encroached on his property because he did not conduct a property survey (ECF No. 60 at 170). Accordingly, Defendant testified that Plaintiffs were not openly on the Disputed Tract (ECF No. 60 at 169). Defendant also testified that each time he drove by the Disputed Tract in 2007, it was not clear or obvious that Plaintiffs were occupying the one-acre because by driving by, he did not know where his boundary line was (ECF No. 60 at 174). When he revisited the Disputed Tract in 2015, however, Gamboa testified that he noticed the pavement "was fresher." (ECF No. 60 at 173).

It was not until 2014 or 2015 when Defendant attempted to sell several acres of real property, including the Disputed Tract, that he "found out about Jordan Ford's attempt to take the property." (ECF No. 60 at 134). Gamboa testified that Plaintiffs did not ask for permission to use the Disputed Tract (ECF No. 60 at 146). Similarly, he testified that he never granted Plaintiffs permission to use the Disputed Tract (ECF No. 60 at 147, 169).

In *Garcia v. Palacios*, the court noted that "[t]he owner of premises is presumed to know the true location of his boundaries and is bound to take notice of the nature and extent of possession by a claimant." *Garcia v. Palacios*, 667 S.W.2d 225, 231–32 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.) (citing *Wilson v. Seigel*, 167 S.W. 1090, 1091 (Tex. Civ. App.—Amarillo 1914, no writ)). Here, Gamboa, as the record owner of the Disputed Tract, is presumed to be aware of his boundary line. Given his frequent drives by the Disputed Tract, he had an unimpeded visual observation of Plaintiffs' storage of vehicles, improvements to the fence, installation of lighting,

and pavement of the road. Most importantly, such unencumbered views would have alerted Gamboa of Plaintiffs' encroachment on his property. "The fencing of land has long been recognized as visible appropriation." ***Kinder Morgan N. Tex. Pipeline, L.P. v. Justiss***, 202 S.W.3d 427, 439–40 (Tex. App.—Texarkana 2006, no pet.) (citations omitted)); ***Dudley v. Johnson***, 2014 Tex. App. LEXIS 9071, 2014 WL 3973943, at *3 (Tex. App.—Texarkana Aug. 15, 2014, no pet.); ***Masonic Bldg. Ass'n of Hous., Inc. v. McWhorter***, 177 S.W.3d 465, 474 (Tex. App.—Houston [1st Dist.] 2005, no pet.). By 2008, the entirety of the Disputed Tract was fenced, and Plaintiffs were in physical possession of the one-acre. These acts alone should have provided notice to Gamboa of Plaintiffs' hostile claim to the property.

Plaintiffs did not merely stray onto Defendant's property, rather their use was both actual and visible given the multiple fences that were constructed over the years, as well as the storage of wrecked vehicles, tires, sheet metal, wood, truck frames, car frames, and boat. Plaintiffs' acts on the Disputed Tract were readily visible, such that knowledge on the part of Gamboa may be presumed. A reasonably prudent and diligent adjoining lot owner would have actual notice of Plaintiffs' appropriation and intent to possess the Disputed Tract. Consequently, the Court finds that Defendant had constructive, if not actual, notice of Plaintiffs' use due to their visible appropriation and possession of the Disputed Tract.

### b. Element 2: Adverse, Hostile, and Under a Claim of Right

Section 16.021(1) requires that possession be "inconsistent with" and "hostile to" the claims of all others. Tex. Civ. Prac. & Rem. Code § 16.021(1). "'[H]ostile' use does not require an intention to dispossess the rightful owner, or even know that there is one." ***Tran***, 213 S.W.3d at 915; ***Calfee v. Duke***, 544 S.W.2d 640, 642 (Tex. 1976).

Here, Plaintiffs testified that they used the entire Disputed Tract (ECF No. 59 at 74 and ECF No. 63 at 86–87). There was evidence that Plaintiffs stored customer vehicles on the Disputed Tract, installed a fence that surrounds the one-acre, maintained the fence, used the Disputed Tract on a regular basis, paved the front "roadside" portion of the property, and installed base material and lighting (ECF No. 43 at 7). The Court finds that Plaintiffs had an adverse and hostile intent to possess the Disputed Tract.

Defendant argues that Plaintiffs' actions did not reasonably notify it that a hostile claim was being asserted to the Disputed Tract. Again, the Court disagrees. Although Plaintiffs testified that they thought they were building a fence around their own property, hostile use does not require an intention to dispossess the record-owner. Defendant's lack of knowledge concerning its own property boundaries cannot defeat Plaintiffs' adverse possession. *See **Brownson v. Scanlan**, 59 Tex. 222, 226 (1883) ("[T]he party holding the superior title would not be excused for ignorance of the particular claim of right under which the premises were held by those in possession. He is not in the condition of an ordinary and casual observer, but must diligently look to his own interests, know the boundaries of his own land, and ascertain the extent, meaning and locality of any settlement made within them without his authority.").

During trial, Defendant's counsel asked Trompeter: "And so you felt that you would just continue to use [the Disputed Tract] as necessary until somebody came and told you to get off[?] . . . ." to which Trompeter responded affirmatively (ECF No. 59 at 64). During his closing argument, Defendant's counsel relied primarily on Trompeter's answer to this single question as evidence that Plaintiffs failed to meet the claim of right element (ECF No. at 63 at 160–61). Belief that one is the rightful owner and has no competition for the ownership of the land at issue is sufficient intention of a claim of right. ***Calfee***, 544 S.W.2d at 642; ***Julien v. Baker***, 758 S.W.2d

27

873, 877 (Tex. App.—Houston [14th Dist.] 1988, writ denied). A visible appropriation may be taken as evidence of a claim of right when the claim of right is not otherwise expressed. *Ramirez v. Wood,* 577 S.W.2d 278, 287 (Tex. Civ. App.—Corpus Christi 1978, no writ). The Court does not find Trompeter's response as indicative that Plaintiffs lacked intent, nor does it find the response to be dispositive of Plaintiffs' adverse possession claim. Plaintiffs' hostile use of the Disputed Tract does not require an intent to dispossess the record owner, Gamboa. The Court finds that most, if not all, of Plaintiffs' testimony shows their adverse and hostile intent to claim the Disputed Tract as their own.

Defendant also relies heavily on *Calfee v. Duke* for the proposition that Plaintiffs failed to meet the element of claim of right. (ECF No. 58 at 4); 544 S.W.2d 640 (Tex. 1976). Notably, the court in *Calfee* held that the adverse possession claimant's actual and visible possession and use, coupled with his claim of right satisfied the statutory requirements. *Id.* at 642. Like the claimant in *Calfee,* Plaintiffs' use of the Disputed Tract was actual, visible, adverse, hostile, and under a claim of right. Additionally, Plaintiffs' knowledge of the deficiency of their record title does not weigh against them. *Id.*

Here, Plaintiffs testified that they intentionally built the fence around the Disputed Tract and stated that they believed they were enclosing their own property. Even "mistaken beliefs about ownership do not transfer title until someone acts on them." *Tran,* 213 S.W.3d at 914; *see Ellis v. Jansing,* 620 S.W.2d 569, 571–72 (Tex. 1981) (noting that mistaken belief of landownership will not give rise to adverse possession claim unless possession is accompanied by intent to appropriate). Here, Plaintiffs acted on their own belief of ownership by constructing a fence around the Disputed Tract. Plaintiffs' construction of the fence, though based on a mistaken belief of ownership, indicates nonetheless "unmistakably an assertion of a claim of exclusive ownership in

the occupant." ***Rhodes***, 802 S.W.2d at 645; ***Kazmir v. Benavides***, 288 S.W.3d 557, 564–65 (Tex. App.—Houston [14th Dist.] 2009, no pet.); ***McWhorter***, 177 S.W.3d at 474. The facts disclose no evidence that Plaintiffs' possession of the Disputed Tract was other than hostile. For all the above reasons, the Court finds that Plaintiffs' use of the Disputed Tract was adverse, hostile, and under a claim of right.

### c.  Element 3: Open and Notorious Possession

"If there is no verbal assertion of claim to the land brought to the knowledge of the landowner, the adverse possession must be so open and notorious and manifested by such open or visible acts that knowledge on the part of the owner will be presumed." ***Osborn v. Deep Rock Oil Corp.***, 267 S.W.2d 781, 787 (Tex. 1954) (citing ***Hopkins v. Waterstreet***, 275 S.W. 303 (Tex. Civ. App. 1925, writ dism'd)).

As previously mentioned, Defendant's lack of knowledge concerning its own property boundaries cannot defeat Plaintiffs' adverse possession. Here, Plaintiffs' encroachment was so open and notorious that knowledge on Gamboa's part will be presumed. Plaintiffs' use occurred in an area by which Defendant admittedly passed many times per year. The Court found the testimony of Clay Schlinke, the sole limited and general partner of Tesoro, to be helpful in its analysis of the open and notorious element.

Around 2006 or 2007, Schlinke contemplated buying 55-acres, including the Disputed Tract, from Gamboa (ECF No. 63 at 11). Schlinke testified that upon his initial inspection of the property, he noticed vehicles parked on the Disputed Tract next to the Jordan Ford Collision Center (ECF No. 63 at 13). According to Schlinke, the Disputed Tract served as a "spillover parking area" and was "used for [Jordan Ford's] Collision Center." (ECF No. 63 at 13). Additionally, Schlinke

testified that the Disputed Tract, as well as the parked vehicles, could be seen from Judson Road (ECF No. 63 at 13). Based on his real property survey, Schlinke knew that the parked vehicles on the Disputed Tract were on the land he had under contract and lease (ECF No. 63 at 28, 48–49). Schlinke also testified that he noticed a fence that surrounded the Disputed Tract during his initial inspection of the land (ECF No. 63 at 14, 48–49). Lastly, Schlinke discussed how he did not consider using the Disputed Tract for real estate development because of potential environmental issues given the spillage of oil and vehicle fluids on the grounds (ECF No. 63 at 19–20). Schlinke's testimony further shows that Plaintiffs engaged in numerous activities that openly indicated their hostile intent to claim the Disputed Tract, notifying a reasonable and prudent owner of their adverse claim.

Accordingly, the Court finds that Plaintiffs provided notice to the community and particularly to Defendant that they were treating the Disputed Tract as their property. *See **Burton v. Holland**,* 278 S.W. 252, 254 (Tex. App.—Beaumont 1925, writ ref'd) ("In order to make a good claim by adverse possession, the true owner must have actual knowledge of the hostile claim, or the possession must be so open, visible, notorious, distinct, and hostile as to raise the presumption of notice that the rights of the true owner are invaded intentionally and with the purpose of asserting a claim of title adverse to his, so patent that the owner could not be deceived, and such that if he remains in ignorance thereof it is his own fault.") (citing ***Hous. Oil Co. v. Stephney**,* 187 S.W. 1078 (Tex. Civ. App.—Beaumont 1916, writ ref'd)).

### d. Element 4: Peaceable Possession

Peaceable possession means possession of real property that is continuous and is not interrupted by an adverse suit to recover the property. *See* Tex. Civ. Prac. & Rem. Code

§ 16.021(3); ***Levy v. Leach,*** 2021 Tex. App. LEXIS 7571, 2021 WL 4165199, at *13 (Tex. App.—Houston [14th Dist.] Sep. 14, 2021, no pet.); ***Kazmir,*** 288 S.W.3d at 561.

Defendant brought an "adverse suit" in state court to recover the Disputed Tract on March 18, 2020 (ECF No. 43 at 17 and Trial Def. Ex. 67). Specifically, Defendant filed suit in the 438th Judicial District of Bexar County, Texas (the "State Court Lawsuit") seeking damages in a trespass to try title action (ECF No. 43 at 17). Ordinarily, a trespass to try title action constitutes an adverse suit that interrupts a claimant's peaceable possession of property. *See* ***Salinas v. Salinas,*** 2018 Tex. App. LEXIS 6632, 2018 WL 3998672, at *6–8 (Tex. App.—San Antonio Aug. 22, 2018, no pet.) (finding that trespass to try title action interrupted claimant's peaceable possession of property). In the instant case, however, Plaintiffs accrued limitations title prior to the State Court Lawsuit. As such, Plaintiffs correctly argue that their adverse possession was established well before the State Court Lawsuit in 2020, as will be discussed in more detail in Section IV(f) of this Memorandum Opinion (ECF No. 63 at 148). The Court concludes that Defendant's State Court Lawsuit did not interrupt Plaintiffs' peaceable possession of the Disputed Tract. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 16.026(a), 16.021(3).

### e. Element 5: Exclusive Possession

"The possession must be of such character as to indicate *unmistakably* an assertion of a claim of *exclusive* ownership in the occupant." ***Rhodes,*** 802 S.W.2d at 645 (citing ***Rick v. Grubbs,*** 214 S.W.2d 925, 927 (Tex. 1948) (emphasis in original)). "An adverse-possession claimant who builds and maintains fences to enclose another's property is exerting an exclusive ownership in himself or herself that is hostile to the landowner." ***Dudley,*** 2014 Tex. App. LEXIS 9071, 2014 WL 3973943, at *3 (citing ***McDonnold v. Weinacht,*** 465 S.W.2d 136, 141 (Tex. 1971)), ***Tran,*** 213 S.W.3d at 914.

Plaintiffs testified that they built a fence around the Disputed Tract to secure the property from vandals (ECF No. 59 at 92–93, ECF No. 63 at 78–81). According to Cross, Plaintiffs intended to enclose the Disputed Tract and use it as their own (ECF No. 63 at 84). Between 1996 and the time of trial, the evidence showed that Plaintiffs made multiple visible improvements to the Disputed Tract: they installed a new fence around the perimeter of the Disputed Tract, added lighting, applied base material, and paved the frontage road (ECF No. 59 at 19, 70, 74). Cross testified that Plaintiffs continuously maintained and excluded others from access to the Disputed Tract since the fence was installed (ECF No. 59 at 85 and ECF No. 63 at 77–78, 83–84).

Applied here, Plaintiffs' possession was hostile because it was exclusive by virtue of complete enclosure through fencing (ECF No. 63 at 87). Thus, the fencing was notice to the world, and particularly to Defendant, that Plaintiffs were treating the Disputed Tract as their own. Again, it is unnecessary to show that Plaintiffs had the intent to dispossess the record owner, Gamboa, but only that they intended to possess the land to the exclusion of others. ***Tran***, 213 S.W.3d at 915. Moreover, there was no evidence that the possession of the Disputed Tract was shared with anyone else. The Court finds that when Plaintiffs erected the fence around the Disputed Tract to secure the property, they intended to claim ownership of the Disputed Tract to the exclusion of all others. *See **Levy***, 2021 Tex. App. LEXIS 7571, 2021 WL 4165199, at *15 (finding that claimant's construction of fence around disputed land, though based on mistaken belief of ownership, indicates unmistakable exclusive ownership). This Court concludes that reasonable and fair-minded people could find that Plaintiffs intended to claim the Disputed Tract and exclude others.

### f. Element 6: Continuous Possession for 10-Year Statutory Period

Defendant argues that Plaintiffs did not continuously hold the Disputed Tract for the requisite ten-year period (ECF No. 58 at 5). Continuous means, "[M]arked by uninterrupted

extension in space, time or sequence[.]" MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 13 (11th ed. 2003) at 270.

First, Defendant argues that Plaintiffs did not continuously hold the Disputed Tract for the ten-year period because Bexar County Appraisal District records show Plaintiffs' fence was not installed until 2012 (ECF No. 58 at 5, ECF No. 63 at 88, and Trial Def. Ex. 60). On redirect by Plaintiffs' counsel, Cross testified that 590 square feet of fencing would not suffice to cover the entirety of the Disputed Tract (ECF No. 63 at 110). Rather, the 590 square feet of fencing erected in 2012 was "just a portion of the entire fence." (ECF No. 63 at 110). Regardless, Defendant's argument runs counter to the testimony of several witnesses, including Trompeter, Cross, Schlinke, Haas, and Gamboa.

Although none of the witnesses could identify a specific date on which the fence was completed, the evidence shows that the fence was constructed before 2012. Specifically, Trompeter testified that Plaintiffs discarded a portion of a pre-existing boundary fence when they purchased the Collision Center around 1996 or 1997 (ECF No. 59 at 64). Cross testified that when he first visited the Disputed Tract in the late 1990s, he remembers, albeit vaguely, seeing a ranch fence (ECF No. 63 at 73). Cross recalls there being both a ranch fence and barbed wire fence around the Disputed Tract in 2003 (ECF No. 63 at 77–78). Additionally, Cross testified that in 2010, a square chain link fence encompassed the Disputed Tract (ECF No. 63 at 84). Schlinke also testified that when he first visited the property around 2006 or 2007, there was a barbed wire fence around the Disputed Tract (ECF No. 63 at 13–14, 48–49). Similarly, Christopher "Chip" Haas, a city councilman at the time, testified that "[Jordan Ford] did have it well-fenced . . . ." when he visited the property around 2007 or 2008 (ECF No. 60 at 99). Lastly, Gamboa testified that prior to 2012, he relied on a fence to instruct him on where his boundary line was (ECF No. 60 at 108).

Considering evidence to the contrary, the Court does not agree that the fence surrounding the Disputed Tract was constructed in 2012.

Second, Defendant argues that Plaintiffs failed to meet the ten-year limitation period because "Google Earth photos also appear to show virtually the entire lot was not fenced until October [] 2012." (ECF No. 58 at 5 and Trial Pls. Ex. 13 at 7). Plaintiffs' Exhibit 13 depicts several aerial images of the Disputed Tract from 2002 to 2019 (Trial Pls. Ex. 13). When examining this Exhibit, Defendant's counsel argued that in some photographs, vehicles cannot be seen on the Disputed Tract, hence, Plaintiffs were not using the property (ECF No. 63 at 89). As Cross aptly noted during trial, "you don't have to have cars there every second to use it." (ECF No. 63 at 90). The Court agrees. While the Court recognizes that some customer vehicles may have only been parked for a period of time—as opposed to the entirety of the ten-year period—the evidence reveals that Plaintiffs uninterruptedly used the Disputed Tract for the business of Jordan Ford's body shop. For example, the storage of salvage vehicles, scrap metal, tires, wood, a boat, and a dumpster, as well as vehicles simply driving through the property constitute continuous use of the Disputed Tract.

The Court finds that it is not necessary that a particular facet of Plaintiffs' business operation continue for ten years. Notably, what the Court finds instructive is that Plaintiffs' use be continued for the limitation period. The Court thus finds that Plaintiffs used the Disputed Tract in several ways over a period of ten years, uninterruptedly, for the business of its Collision Center. *See **Gutierrez v. Lorenz**,* 2020 Tex. App. LEXIS 3470, 2020 WL 1951606, at *12 (Tex. App.— Houston [14th Dist.] Apr. 23, 2020, no pet.) (finding argument unpersuasive where appellant presumes possession means only residing on disputed property and not other possessory actions such as repairing or renovating property). Although there is no precise formula to determine what

34

constitutes actual possession, it would be virtually impossible to require an adverse possession claimant occupy every square inch of a disputed property for every moment of the ten-year limitation period. ***Orfanos Contractors, Inc. v. Schaefer,*** 582 A.2d 547, 551 (Md. App. 1990); ***Canton Asphalt Co. v. Fosnaught,*** 2011-Ohio-5902.

"The adverse possession claimant need only use the land for some purpose to which it is adaptable, and in the same manner an ordinary owner would use the property." ***Kazmir,*** 288 S.W.3d at 561 (citing ***Fuentes v. Garcia,*** 696 S.W.2d 484, 485 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.)). The Disputed Tract lies in an area zoned for business use (ECF No. 59 at 68–69). Plaintiffs have, since 1996 or 1997, consistently used the Disputed Tract as an extension of its body shop.[16] Plaintiffs drove vehicles over the Disputed Tract and into the body shop on a frequent basis, stored vehicles on the Disputed Tract, cleaned and maintained the Disputed Tract as though that parcel were their own, applied base material, and paved the Disputed Tract at its own expense. Plaintiffs' use of the Disputed Tract is consistent with the purposes for which the land is naturally adapted. Accordingly, Plaintiffs have possessed the Disputed Tract in a manner that would characterize an owner's use. *See generally* ***Wilson v. Whetstone,*** 2010 Tex. App. LEXIS 3041, 2010 WL 1633087, at *33 (Tex. App.—Austin Apr. 20, 2010, pet. denied).

The Court finds that Plaintiffs had continuous possession of the Disputed Tract for a period of more than ten years preceding the Defendant's March 2020 filing of the trespass to try title suit.[17] As early as 1996 or 1997, Plaintiffs' ten-year limitation period began running. *See* Tex. Civ.

---

[16] Defendant did not provide rebuttal evidence to Plaintiffs' assertion that they began occupying the Disputed Tract in 1996 or 1997.

[17] In Defendant's Post-Trial Brief, counsel argues that the fact that Plaintiffs paid property taxes on the Disputed Tract has no relevancy in the instant case because such evidence would only be relevant for purposes of ownership under the 25-year adverse possession statute. (ECF No. 58 at 3); *see* Tex. Civ. Prac. & Rem. Code § 16.029(a). While this may be true, at least one court has found that while payment of taxes is competent evidence of adverse possession, the payment of taxes alone will not establish a claim under the ten-year statute. ***Rhodes,*** 802 S.W.2d at 646.

Prac. & Rem. Code Ann. Section 16.026(a). Plaintiffs intended and claimed the Disputed Tract to the exclusion of Defendant and all other persons. Plaintiffs had exclusive dominion over the Disputed Tract and appropriated it to their sole use since on or before 1997, continuously to the present time. That being their claim of right, and it being coupled with their actual and visible possession and use, the adverse claim and possession satisfy the statutory requirements and cannot be defeated by Defendant's lack of knowledge or by the absence of a realization that there could be other claimants for the Disputed Tract. *See **Pool**,* 124 S.W.3d at 198 (holding that "a record titleholder's ignorance of what it owns does not affect the running of limitations.").

## V. *Automatic Stay*

According to Defendant, at issue before the Court is how to determine the statutory period for adverse possession when a bankruptcy case is filed and how this impacts the ten-year statutory period. The parties disagree as to whether the statutory period was interrupted by the automatic bankruptcy stay on February 10, 2010, the date the petition for relief was filed. No case has been cited to the Court nor has the Court's research revealed any case, in Texas or any jurisdiction, that deals with the precise issue of whether the filing of a bankruptcy petition stops the running of time accumulating to the benefit of an adverse possessor, thus defeating any claim to Debtor's property through adverse possession.

The earliest date upon which Plaintiffs' adverse possession could have begun was in 1996 or 1997, when it purchased the adjacent lot, Jordan Ford Collision Center. Thus, at the time Debtor filed its petition for relief in 2010, Plaintiffs had been in possession for about 13 or 14 years, three to four years more than the required statutory period.

Because Plaintiffs did not receive notice of Debtor's Bankruptcy Case, Plaintiffs did not have an opportunity to raise their adverse possession claim. Accordingly, the Court did not acknowledge or consider Plaintiffs' claim. Had the adverse possession claim been raised, the Court would have had the power to examine any such claim adverse to the bankruptcy estate for the purpose of determining whether it was substantial or merely colorable. ***Harrison v. Chamberlain***, 271 U.S. 191, 192–93 (1926). The rule is that, when a controversy arises as to whether there is any adverse claim, the court can summarily inquire into it, and if the adverse claim or right is only colorable, the court may make a judgment as to its merits. ***Spach v. Fisher***, 310 F.2d 328 (5th Cir. 1962). Here, at the time of the filing of the petition, Plaintiffs did have a substantial claim. *But see* ***Gen. Iron Indus. v. A. Finkl & Sons Co.***, 686 N.E.2d 1, 4 (Ill. App. 1st Dist. 1997) (finding that since plaintiff was not yet a *bona fide* adverse claimant, any statutory period for the purpose of adverse possession was interrupted)).

Because the Disputed Tract left the bankruptcy estate, the Court does not find this issue to be dispositive because Plaintiffs proved their adverse possession claim occurred prior to the commencement of Debtor's Bankruptcy Case on February 10, 2010. Accordingly, the Court finds that, for the requisite statutory period, Plaintiffs adversely possessed the Disputed Tract that was ordered free and clear of all liens pursuant to the Court's Order entered February 21, 2012 (Main Case ECF No. 245).

## VI. *Defendant's Affirmative Defenses*

### a. Res judicata, collateral estoppel, judicial estoppel, equitable mootness, unclean hands, and illegality

First, Defendant argues that Plaintiffs' claims are barred in full, or in part, under the doctrines of "res judicata, collateral estoppel, judicial estoppel, and/or equitable mootness" and

"unclean hands or illegality" (ECF No. 43 at 4). When affirmative defenses are insufficiently pleaded, courts apply the same pleading standards as applied with respect to a complaint under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). The Fifth Circuit found that "a defendant nevertheless must plead an affirmative defense with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced." ***Woodfield v. Bowman,*** 193 F.3d 354, 362 (5th Cir. 1999) (noting that (1) an affirmative defense requires the same pleading standard as the complaint; (2) fair notice requires enough specificity so as to not surprise the opposing party; and (3) boilerplate defense pleading is not sufficient under Federal Rule of Civil Procedure (8)(c)).

In the instant case, Defendant did not identify the elements of the defenses and did not plead any facts in support of those elements. Defendant's simply "naming" the broad affirmative defenses of "res judicata, collateral estoppel, judicial estoppel and/or equitable mootness" and "unclean hands or illegality" falls well short of the minimum particulars needed to identify the affirmative defenses in question and thus notify Plaintiffs. *See* ***E.E.O.C. v. Courtesy Bldg. Servs., Inc.,*** 2011 U.S. Dist. LEXIS 5938, 2011 WL 208408, at *16 (N.D. Tex. Jan. 21, 2011) ("Courtesy's assertions of 'waiver, release, estoppel, or unclean hands' are not accompanied by any factual allegations giving notice of the nature of the defenses."); ***Software Publrs. Ass'n v. Scott & Scott, Ltd. Liab. P'ship,*** 2007 U.S. Dist. LEXIS 59814, 2007 WL 2325585, at *6 (N.D. Tex. Aug. 15, 2007) (defendants' bald assertions that plaintiff's claims are barred by doctrines of waiver, estoppel, and unclean hands do not provide fair notice of defenses).

As pleaded, the Court cannot discern how the affirmative defenses of res judicata, collateral estoppel, judicial estoppel, equitable mootness, unclean hands, and illegality rebut a request for a declaratory judgment action. For example, Defendant does not provide which relitigation of issues would implicate collateral estoppel or provide the nature of Plaintiffs' unclean hands. Therefore,

Defendant's affirmative defenses should be stricken under Federal Rule of Civil Procedure 12(f) (as adopted by Fed. R. Bankr. P. 7012(b)) because Defendant did not state any facts to support its affirmative defenses.

### b. Statute of limitations

Next, Defendant argues that Plaintiffs' claims are barred under the applicable statute of limitations (ECF No. 43 at 4); Tex. Civ. Prac. & Rem. § 16.026. After reviewing the pleadings, admitted exhibits, and trial testimony, the Court finds that shortly after Plaintiffs purchased the Collision Center in September 1996, Plaintiffs began parking vehicles on the Disputed Tract (ECF No. 59 at 62). Throughout the years, Plaintiffs have cleaned and maintained the property as though it were their own, applied base material to the entirety of the Disputed Tract at their own expense, made repairs and renovations, and fenced the property. Trial testimony also showed that Plaintiffs have occupied the Disputed Tract continuously for the business of the Collision Center. This is evidence that Plaintiffs continuously cultivated, used, or enjoyed the property.

Any ouster by the record title holder after the applicable limitations period comes too late. ***Kazmir,*** 288 S.W.3d at 561; ***Sterling,*** 456 S.W.2d at 533; ***Gutierrez,*** 2020 Tex. App. LEXIS 3470, 2020 WL 1951606, at *5. Here, Defendant comes too late, as Plaintiffs have established all the elements of the ten-year statute of limitations for adverse possession.

### c. Superior title

Lastly, Defendant argues that Plaintiffs' claims are barred because superior title is vested in Defendant (ECF No. 43 at 5). The evidence before this Court, and as described above, shows that Plaintiffs adversely possessed the Disputed Tract for the requisite statutory period. Plaintiffs testified that they began occupying the Disputed Tract shortly after purchasing the Collision Center

around 1996 or 1997 until present day. Plaintiffs have constructed and modified several fences over the years that surround the Disputed Tract, as well as stored customer vehicles, salvage vehicles, tires, sheet metal, wood, truck frames, car frames, and a boat on the Disputed Tract. Schlinke testified that he noticed fluids leaking from the salvaged vehicles and noted that the gas, diesel, or oil may have caused environmental issues to the grounds. Due to the "mess" on the Disputed Tract, Plaintiffs often drove waste trucks around the property to haul miscellaneous salvage parts off the Disputed Tract (ECF No. 63 at 73, 81). Thus, there was not only evidence to suggest that someone occupied the property on a consistent basis, but also extraordinary activity that even a casual observer would be likely to notice. *Fletcher*, 217 S.W.3d at 762. Because Plaintiffs satisfied their burden by a preponderance of the evidence, Plaintiffs therefore have superior title by adverse possession. *See Martin v. Amerman*, 133 S.W.3d. 262, 265 (Tex. 2004) (providing that super title can be proved by adverse possession).

## VII.  *Defendant's Counterclaims Against Plaintiffs*

In the Joint Pretrial Order, Defendant filed several counterclaims against Plaintiffs, including, but not limited to: declaratory judgment[18]; attorneys' fees and costs; trespass to try title; trespass; unjust enrichment; constructive trust; and injunctive relief (ECF No. 43 at 5–6). The Court has considered Defendant's counterclaims and finds that any issues regarding damages or attorney's fees are reserved for the damages portion of the case. For the reasons stated in this Memorandum Opinion regarding the Court's finding of adverse possession, Defendant's counterclaims are denied.

---

[18] In Section 4.7(a)(3) of the Joint Pretrial Order, Defendant requests that the Court declare "that the Deed by which Plaintiffs/Counter-Defendants claim title to the Disputed Tract did not convey title to the Disputed Tract to Plaintiffs/Counter-Defendants[.]" (ECF No. 43 at 5). While the Court acknowledges that the deed from Tesoro to Plaintiffs did not convey proper title, such declaration would be immaterial here because, pursuant to the Court's Opinion, Plaintiffs acquired title to the Disputed Tract by adverse possession.

### CONCLUSION

Plaintiffs have carried their burden to establish an ownership interest in the Disputed Tract through adverse possession. Plaintiffs' claims began accruing shortly after they purchased the Jordan Ford Collision Center around 1996 or 1997. More significantly, Defendant had at least constructive notice of Plaintiffs' use of the Disputed Tract. Accordingly, Plaintiffs should have received notice of the § 363 Sale that occurred during Debtor's Bankruptcy Case. Because Plaintiffs did not receive proper notice, the § 363 Sale Order did not extinguish Plaintiffs' interests in the Disputed Tract. Additionally, since Plaintiffs paid taxes on the Disputed Tract from 2011 to the time of trial, Plaintiffs' adverse possession claim was not barred by Texas Tax Code § 33.54(a). For the foregoing reasons, Plaintiffs' request for a declaratory judgment that they have acquired title to the Disputed Tract through adverse possession is granted.

Accordingly, IT IS ORDERED that Plaintiffs' request for a declaratory judgment that they have acquired title to the Disputed Tract through adverse possession is GRANTED.

IT IS FURTHER ORDERED that the Court will set a status conference to discuss a second trial on damages.

# # #